O

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **NEUTRINO DEVELOPMENT** § | | |
| **CORPORATION,** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | **CIVIL ACTION NO. H-01-2484** | |
| § | | |
| **SONOSITE, INC.,** § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM & ORDER

Pending before the Court is Plaintiff Neutrino Development Corporation's Motion to Compel the Production of Litigation Counsel's Documents and Communications (Dkt. #233). The Court, having reviewed the motion, the responses of the parties, and the relevant law, is of the opinion that the motion should be granted in part and denied in part, as outlined below.

### Factual and Procedural Background

Plaintiffs Neutrino Development Corporation and Richard T. Redano (collectively "Neutrino") filed the pending cause of action against Defendant Sonosite, Inc. ("Sonosite") on July 24, 2001, alleging that four diagnostic ultrasound devices manufactured and marketed by Sonosite infringe Patent No. 6,221,021("the '021 patent"). Upon receipt of the complaint, Sonosite, at the instruction of its corporate counsel, Orrick, Herrington & Sutcliffe, L.L.P. ("Orrick"), retained the law firm of Townsend & Townsend & Crew ("Townsend") to render an opinion of counsel as to whether Sonosite's products potentially infringed any claim of the '021 patent. Townsend gave Sonosite an oral opinion in August of 2001 which was reduced to writing on February 1, 2002. The Townsend opinion concluded that Sonosite did not infringe any claims of the '021 patent,

either literally or under the Doctrine of Equivalents, and that the '021 patent was invalid.

Sonosite filed its answer to the Original Complaint on August 14, 2001. Although Thomas Patterson of Susman Godfrey is listed as the "Attorney-in Charge" for Sonosite, Orrick appeared as "Of Counsel" on Sonosite's answer, thus making an initial appearance as trial counsel. Orrick continued to be listed as "Of Counsel" on numerous documents through 2004, including the motions for summary judgment on the issues of infringement and invalidity. The motion for summary judgment on the issue of infringement focused solely on the idea that the "reverse doctrine of equivalents" applied to the '021 patent and the Sonosite devices. The Court, in an order entered on September 30, 2004, found that by arguing that the reverse doctrine of equivalents applied, Sonosite had conceded that it literally infringed the claims of the '021 patent. The Court further found that Neutrino had made a prima facie showing of infringement and that the reverse doctrine of equivalents test had not been met. As such, the Court granted Neutrino's motion for summary judgment on the issue of infringement. On October 21, 2004, Sonosite filed a motion to substitute Paul E. Krieger and Lucas T. Elliot with the firm of Fulbright & Jaworski as trial counsel, thus replacing both Susman Godfrey and Orrick. The Court granted the motion on October 22, 2004. Sonosite's new counsel has filed an additional motion for summary judgment on the issue of invalidity and has filed a motion to reconsider the September order on infringement.

The pending motion requests that the Court compel production of any and all documents relating to the Townsend opinion letter. Neutrino argues that Sonosite, by invoking the advice of counsel defense, has waived attorney client privilege with respect to the subject matter of the opinion letter, regardless of who drafted the produced documents. Neutrino thus asks this Court to adopt a broad subject matter waiver of the attorney client privilege. Sonosite, on the other hand, argues that the waiver of attorney client privilege extends only to those documents already

produced–namely, documents created by opinion counsel, Townsend and Townsend and Crew. Sonosite argues that allowing the waiver of attorney client privilege to extend beyond opinion counsel to the documents and communications between Sonosite and its litigation counsel would negatively impact Sonosite's ability to communicate in confidence with its attorneys, thus giving Neutrino an unfair advantage in this litigation.

## DISCUSSION

Three separate lines of cases have developed concerning the extension of the waiver of attorney client privilege to communications and work product which occurs post-filing of the lawsuit.  First is the line of cases which supports the proposition that all documents and communications relating to the subject matter of the opinion should be discoverable as a result of the advice of counsel waiver of attorney client privilege.  This line of cases concludes that invoking the advice of counsel defense waives attorney client privilege and work product protections to the broadest extent possible and requires disclosure of communications concerning the subject matter of the opinion through trial regardless of whether the information was communicated to the client.  These courts hold, as a general matter, that the patentee should be allowed to explore the state of mind of both the alleged infringer and the alleged infringer's attorney(s).  They further reason that fairness dictates that a party not be allowed to withhold damaging communications claiming attorney-client privilege while disclosing those "privileged" communications that serve their purposes.  See *AKEVA L.L.C. v. Mizuno Corp.*, 243 F. Supp. 2d 418 (M.D.N.C. 2003); *Novartis Pharmaceuticals Corp. v. EON Lab Mfg., Inc.,*  206 F.R.D. 396 (D. Del. 2002); *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182 (E.D. Cal. 2001); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 765 F. Supp. 611 (N.D. Cal. 1991); *D.O.T. Connectors, Inc. v. J.B. Nottingham & Co.*, No. 4:99 Civ. 311, 2001 WL 34104928 (N.D. Fla.

Jan. 22, 2001).

A second line of cases stands for the proposition that waiver of the attorney client privilege and the work product doctrine does not extend to trial counsel.  As the district court in *Dunhall Pharmeceuticals, Inc. v. Discus Dental, Inc.* stated:

> Although defendants have waived work product protection by asserting the advice of counsel defense, that waiver is not absolute.  Once the lawsuit is filed, the waiver of work product protection ends. This temporal limitation flows from the enhanced interest in protecting against disclosure of trial strategy and planning. Following the filing of the lawsuit, defense counsel is engaged in critical trial preparation, often including analysis of their client's case.  Such analysis, while likely related to the subject matter of the asserted defense, is fundamentally different from a similar pre-litigation analysis.  In comparison to work product produced prior to the filing of the lawsuit, litigation-related work product deserves greater protection.  Because the Court finds that the balance of competing interest shifts at the time the lawsuit is filed, it rejects plaintiff's contention that the waiver should extend beyond the date the lawsuit was filed.

994 F. Supp. at 1206. *Accord, Motorola, Inc. v. Voso Technologies, Inc.*, 2002 WL 1917256 (N.D. Ill. 2002); *Carl Zeiss Jena GmbH v. Bio-Rad Laboratories, Inc.*, 2000 WL 1006371 (S.D.N.Y. 2000); *Kelsey-Hayes Co. v. Motor Wheel Corp.*, 155 F.R.D. 170 (W.D. Mich. 1991).

The third line of cases takes a middle ground position that a party should not be allowed to rely on self-serving statements while withholding damaging or contradictory information under the pretense of attorney client privilege.  This line of cases also notes, however, that there should be a higher standard for waiver of opinion and work product created by trial counsel.  As a result, this line of cases concludes that waiver extends to trial counsel only to the extent that documents were communicated to defendants and contain conclusions or advice that contradict or cast doubt on the earlier opinions.  *BASF Aktiengesellschaft v. Reilly Industries, Inc.*, 283 F. Supp. 2d 1000 (S.D. Ind. 2003); *Thermos Co. v. Starbucks Corp.*, 1998 WL 781120 (N.D. Ill. 1998); *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361 (D. Mass. 1995); *Clintec Nutrition Company v.*

*Baxa Corp.*, 1996 WL 153881 (N.D. Ill. 1996).

In its motion to compel, Neutrino advocates that the court should adopt the reasoning outlined in the third line of cases. Neutrino relies on *BASF Aktiengesellschaft v. Reilly Industries, Inc.* to support its assertion that trial counsel's opinions should be discoverable. 283 F. Supp.2d 1000 (S.D. Ind. 2003). The court in *BASF* held that because there were apparent contradictions between the position taken by opinion counsel and the position taken by trial counsel as to issues contained within the opinion letter, trial counsel's communications to the client were also relevant concerning the client's continued reliance on the opinion letter. 283 F. Supp.2d at 1006-07. For this reason, the Court adopted the approach taken by the middle ground cases and required defendant to produce all post-litigation material relating to the subject matter of the opinion letter that had been communicated to the client. *Id.* The court was careful to note that this holding was not because the court deemed it appropriate in light of a continuing infringement, but, rather. because defendant had proffered new and seemingly contradictory opinions during the lawsuit. *Id.* at 1008.

Neutrino argues that Sonosite has engaged in a similar shifting of opinion regarding infringement, and that this justifies waiving the attorney-client privilege with regard to both trial counsel in this case. The Court, however, is unpersuaded by this argument. Although Neutrino is correct that the Court's order on infringement found that Sonosite had conceded the issue of infringement, the Court does not find that this is inconsistent with Sonosite's earlier position.

Rather, Sonosite has contended from the beginning of this litigation, that its construction of the claims, not the Court's, is correct. Its position is based, it appears, in part on the opinion letter received from Townsend. Sonosite has consistently requested, and continues to request, that the Court revisit the claim construction and reinterpret the claims in a manner consistent with its

5

position. Its decision to pursue a reverse doctrine of equivalents argument, then, appears to be a trial strategy rather than a divergent opinion from that stated in the opinion letter. Nor is the Court persuaded that the fact that the opinion letter does not mention the reverse doctrine of equivalents amounts to a shift in opinion between trial counsel and opinion counsel. Rather, the Court notes the hardship that would be placed on opinion counsel if it were required to anticipate every possible trial strategy and ensure that it was included in the opinion letter to protect future trial counsel's ability to use that strategy without fear of waiving attorney-client privilege. Such a requirement would, in the Court's opinion, unfairly prejudice defendants.

The Northern District of California, in *Sharper Image Corp. v. Honeywell International, Inc.* came to the same conclusion when faced with a similar factual scenario. 222 F.R.D. 621 (N.D. Cal. 2004). In *Sharper Image*, Kaz, Inc., a co-defendant, received professional services from three different law firms, an opinion counsel and two litigation counsel. 222 F.R.D. at 625. Kaz's opinion counsel, Wolf Greenfield, made no appearance in the lawsuit. Another law firm, Darby & Darby, initially represented Kaz in court. *Id*. Darby & Darby had served not only as litigation counsel, but had also advised Kaz on certain pre-trial matters, including its views regarding the Wolf Greenfield opinion letter. *Id*. at 626. Shortly after litigation began, Kaz also retained the law firm of Robins Kaplan to serve as litigation counsel. At that point, Darby & Darby withdrew as litigation counsel. *Id.*

In evaluating the scope of the waiver in *Sharper Image*, the district court came to a separate conclusion for each counsel involved. As to opinion counsel, the court found that the waiver extended to all documents relating to the subject matter of the opinion, regardless of when the communication occurred, and regardless of whether it was counsel or the client who sent the communication. *Id.* at 640. As to Darby & Darby, Kaz conceded that it had received input from

Darby & Darby about the opinion letter. The court additionally determined that, given the long-standing relationship between Kaz and Darby & Darby, it would hardly be surprising if the two had communicated about whether Kaz's product infringed the patents in question. *Id.* at 641. Given these factors, the court determined that waiver of the attorney client privilege and work product extended to Darby & Darby for the period of time prior to the filing of the lawsuit on those matters that related to the subject of the opinion letter. The court also determined that the waiver extended to Darby & Darby's communications with Kaz that occurred post-filing. *Id*. at 641-42. In reaching it's post-litigation ruling, the court took special notice of the short period of time that Darby & Darby served as litigation counsel, noting that nothing of real moment occurred during the time between the lawsuit being filed and Robins Kaplan assuming the duties of litigation counsel. *Id*. at 642. The length of the overall relationship between Kaz and Darby & Darby was also a significant factor in that the court determined that such a long-standing and multi-faceted relationship increased the chances that the two had communicated about the opinion letter and the likelihood that Kaz would rely on Darby & Darby's advice about the accuracy of the opinion letter. *Id*.

In this case, Sonosite has already conceded that communications with opinion counsel are discoverable. As to its original and current litigation counsel, however, Sonosite argues that the waiver should not be extended. Although there are similarities between this case and *Sharper Image*, a distinguishing difference is the amount of time that Orrick served as litigation counsel. Unlike counsel in *Sharper Image*, significant events occurred during the time that Orrick served as litigation counsel, including the Markman hearing, the issuance of the claim construction, and the Court's rulings on the first round of summary judgment motions. The Court balances this length of time against the fact that Orrick is apparently the firm that advised Sonosite to obtain an opinion

letter and suggested the Townsend firm as the author.  Although this factor alone does not persuade the Court that the confidential relationship with trial counsel should be disturbed, the Court does find that Orrick's service as corporate counsel pre litigation creates a partial waiver of its attorney-client privilege.  Specifically, to the extent that Orrick, while serving as corporate counsel, expressed opinions as to the issues discussed in the opinion letter, and to the extent that it advised Sonosite to obtain an advice of counsel letter regarding the same, the Court finds that these documents are relevant and discoverable.

Likewise, the Court is not convinced that the waiver of attorney client privilege should extend to Sonosite's current trial counsel, Fulbright and Jaworski.  In determining that the attorney client privilege should not extend to current trial counsel in *Sharper Image*, the California court stated

> in patent litigation between competitors, disabling a defendant from having a confidential relationship with its lead trial counsel about matters central to the case would cause considerable harm to the values that underlie the attorney-client privilege and the work product doctrine...Because of the different capacities in which the law firms were consulted, because of the different functions they were asked to perform, and because of the different time frames in which the communication between them and Kaz primarily occurred, we can expect that there would be considerable differences in the probative value (for the willfulness issues) of evidence from their communications. When the parties litigate whether Kaz reasonably relied on advice of counsel, the trier of fact is likely to ascribe considerable weight to evidence about what advice Kaz was given by Wolf Greenfield and by Darby, but very little weight, if any, to opinions that Robins Kaplan may have expressed to Kaz in the course of litigating this case.

222 F.R.D. at 644.

The court also noted that, although there is "some surface appeal" to the argument that infringement is a continuing tort and therefore there is a continuing duty to reassess the reasonableness of the advice received in an opinion letter, the principal significance of that argument lay within the realm of damages.  The court stated that

> Because Wolf Greenfield is the source of the advice of counsel that Kaz is invoking in its defense, and because it is the "advice" from Wolf Greenfield and Darby that the trier of fact is most likely to require Kaz to heed (and on which the trier of fact is most likely to focus when determining whether Kaz has proceeded in good faith), we have no reason to believe that plaintiff will suffer any real unfairness by being denied access to Kaz's confidential communications with its lead trial counsel about infringement.

*Id.* The court thus concluded that "[i]n the case at bar, it is unlikely that denying Sharper Image access to confidential communications between Kaz and its trial counsel that occurred after the complaint was filed will deprive Sharper Image of any of the relief to which it is entitled under the law." *Id.* The Court finds the above reasoning persuasive when applied to the facts of the case at bar. In particular, the Court finds that Neutrino's ability to recover damages for continuing infringement will not be materially affected by their inability to obtain the confidential communications between Sonosite and trial counsel.

## CONCLUSION

Sonosite shall produce, to the extent it has not already, all documents between it and Townsend & Townsend & Crew relating to the opinions expressed orally in August 2001 and reduced to writing in the February 2002 letter.

Sonsite shall also produce all communications between Sonosite and Orrick which occurred prior to Townsend's issuance of its oral opinion and which relate to the opinions contained therein, as set forth in writing in the February letter. To the extent that Orrick expressed opinions regarding the opinions expressed in the opinion letter while serving as corporate counsel, all related work product is also discoverable under the pre-litigation waiver of attorney client privilege.

Sonosite shall not be required to produce any communications it had with Orrick or

9

Fulbright and Jaworski, which occurred after the issuance of the Townsend opinion, nor shall it be required to produce any post-litigation work product.

It is so ORDERED.

Signed this 9th day of June, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE