# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **NEUTRINO DEVELOPMENT** | § | |
| **CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-01-2484** |
| | § | |
| **SONOSITE, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM & ORDER

Pending before the Court is Plaintiff Neutrino Development Corporation's ("Neutrino")

Motion for Partial Summary Judgment of No Invalidity of Any Asserted Claims by the

Pflugrath and Shinomura Patent Publications Under 35 U.S.C. § 102. (Dkt. # 182).  Also pending

are Defendant SonoSite, Inc.'s ("SonoSite") Motion to Strike the Declaration of Richard T.

Redano (Dkt. # 207) and  SonoSite's Cross Motion for Partial Summary Judgment (Dkt. # 208).

The Court, having considered the motions, the responses of the parties, and the applicable law, is

of the opinion that the motion to strike should be DENIED and the motions for partial summary

judgment should both be DENIED.

## Factual Background

This is an action for patent infringement brought by Neutrino Development Corporation

("Neutrino") against SonoSite, Inc. ("SonoSite").  Neutrino is the owner of United States Patent

No. 6,221,021 ("the '021 patent").  Neutrino alleges that four devices manufactured and

marketed by SonoSite, the SonoSite 180, SonoHeart, SonoSite 180 PLUS, and the SonoHeart

PLUS, infringe on the '021 patent.

Richard T. Redano applied for a patent on the device in question on September 9, 1997.

(Application Serial No. 08/926, 209).   The '021 patent, entitled "Method and Apparatus for Penile Hemodynamic Stimulation, Monitoring, and Drug Delivery Acceleration," resulted from that application. It describes a device for "stimulating and/or monitoring hemodynamic activity, such as blood flow, in a penis." *U.S. Patent No. 6,221,021* at col. 1, ll. 15-16.

Defendant SonoSite began as a division of ATL Ultrasound, Inc., and was spun off as a public company in April 1998.  SonoSite unveiled its first public product in the realm of hand-carried ultrasound devices, the SonoSite 180, on May 17, 1999.  SonoSite began selling the device in June 1999.  In January 2000, SonoSite launched its second product, the SonoHeart.  In April 2001, SonoSite launched a new generation  of these two devices with its introduction of the SonoSite 180 PLUS and the SonoHeart PLUS.

On July 24, 2001, Neutrino filed this action, alleging that SonoSite had illegally used Redano's invention and infringed the '021 patent.  SonoSite answered the complaint on August 14, 2001, asserting that the '021 patent claims are not infringed and are invalid, and counterclaimed for declaratory judgment of non-infringement and invalidity.

On February 20, 2002, after extensive briefing, the Court held a one-day *Markman* hearing on claim construction.  On October 9, 2002, the Court stayed all proceedings pending the Court's *Markman* and summary judgment rulings.  The Court issued its claim construction on August 21, 2003.  This motion for summary judgment was filed as a result of the Court's claim construction.

The pending cross motions for summary judgment focus on U.S. Patent Number 5,722,412 ("the '412 Patent" or the "Pflugrath Patent") and U.S. Patent Number 5,295,485 ("the '485 Patent" or the "Shinomura Patent").  Neutrino claims that it is entitled to summary judgment

because there is no evidence to support a finding that these two prior art references anticipate the claims of the '021 Patent.  SonoSite has filed its cross-motion for summary judgment arguing that it is clear as a matter of law that the two prior art references each anticipate the claims of the '021 Patent.

### Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact.  *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant.  *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995).  "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive

at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).  However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

Patent cases are amenable to summary judgment as any other case when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 (1997); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576-77 (Fed. Cir. 1989); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985).

## Discussion

Neutrino has moved for partial summary judgment, arguing that two prior art references, the Pfulgrath patent and the Shinomura patent, do not anticipate the asserted claims of Neutrino's '021 patent.  Neutrino argues that these references were considered twice by the Patent Office Examiner and were deemed not to anticipate the invention of the claims at issue in the '021 patent.

In response, SonoSite first argues that the declaration of Richard T. Redano, attached to Neutrino's motion for partial summary judgment, should be stricken because Redano does not qualify as an expert and should not, therefore, be allowed to testify as to the limitations of the Pflugrath and Shinomura patents as they relate to the asserted claims of the '021 patent. Additionally, SonoSite argues that portions of the '412 and '485 patents that Neutrino failed to

4

mention describe the very features that Neutrino claims were not disclosed. Based on this evidence, SonoSite filed a cross-motion for summary judgment arguing that the evidence is clear that the '021 patent claims are anticipated by both the Pflugrath and Shinomura patents.

**Motion to Strike**

SonoSite's first argument in response to Neutrino's motion for partial summary judgment is that the declaration of Richard T. Redano should be stricken because Redano does not qualify as an expert in the field of ultrasound technology. SonoSite argues that Redano is thus unqualified to provide testimony comparing the Pflugrath patent or the Shinomura patent to the claims of the '021 patent. Without this evidence, SonoSite argues that Neutrino's motion for partial summary judgment must fail.

In response, Neutrino argues that SonoSite has waived any objection to Redano testifying as an expert when SonoSite failed to object to his declaration being used to support the first round of summary judgments in this case on the issues of invalidity and infringement. Neutrino further contends that Redano is not required to be an expert in the field because invalidity is determined from the standpoint of a person ordinarily skilled in the art at hand. Neutrino maintains that Redano qualifies as one skilled in the art, namely medical ultrasound art, and, therefore, is entitled to testify regarding the claims of the Pflugrath and Shinomura patents as they relate to the claims of the '021 patent.

Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. *Schumer v. Laboratory Computer Sys., Inc.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002). The testimony is

insufficient if it is merely conclusory.  *Id.*; *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("Mere denials or conclusory statements are insufficient."). Although this analysis is generally applied in the context of an alleged infringer who provides testimony from a third-party as to the invalidity of a patent by virtue of the existence of prior art, the Court finds the analysis equally applicable to the present situation.  In this case, it is the maintenance of an existing patent that is at issue.  Neutrino seeks to present the testimony of Richard Redano, as one skilled in the art, to compare the claims of the '021 patent to the Pflugrath and Shinomura patents.  In making his comparison, Redano concludes that neither of the prior art references contains each claim element of the '021 patent.

In order to withstand scrutiny, then, Redano must first be qualified as "one skilled in the art".  To make this determination, however, the relevant art must first be identified. Although SonoSite appears to argue for a more narrow view of the art, insisting that to be skilled in the art, one must be skilled in the electronics or physics of ultrasound, the Court finds this interpretation too narrow.  Rather, the Court finds that the relevant "art" to be the art of medical ultrasounds. Neither side has, as yet, attempted to define the level of ordinary skill in the pertinent art at the time of the invention.  In *Custom Accessories v. Jeffrey-Allan Industries*, 807 F.2d 955 (Fed. Cir. 1986), the Federal Circuit taught that

> [t]he person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art. The actual inventor's skill is not determinative. Factors that may be considered in determining level of skill include: type of problems encountered in art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field. Not all such factors may be present in every case, and one or more of them may predominate.

*Id*. at 962-963 (citations omitted).

6

Within the context of the briefing on this issue, however, the actual inventor's skill is the only evidence the Court has been provided with which to make the determination.  Redano holds a bachelor's of science degree in nuclear engineering, including junior and senior level courses in mechanical engineering, including studies in fluid mechanics, heat transfer and thermal hydraulics,  physics, electrical engineering, mathematics, and studies relevant to the art of ultrasound, including design, structure, function, and operation of ultrasound devices; he is a registered professional engineer and a registered patent attorney; he is a member of the American Institute of Ultrasound in Medicine; he has completed a course sponsored by the Advanced Health Education Center entitled "Ultrasound Physics Spectacular;" and he is the named inventor of four other medical ultrasound patents.  Redano also claims to be familiar with the prior art listed in the '021 patent, including the Pflugrath and Shinomura patents.

Because the actual level of skill of the hypothetical person ordinarily skilled in the art is a factually intensive inquiry, the Court is not able, at this point, to say that Redano is not adequately skilled in the art to offer testimony regarding the issue of anticipation.  His level of skill, as compared to others claiming to be ordinarily skilled in the art, and as compared to the hypothetical person skilled in the art, will be a subject ripe for cross-examination.  As such, the Motion to Strike the Declaration of Richard Redano is DENIED.

**Cross Motions for Summary Judgment on Invalidity**

Neutrino argues that neither the Pflugrath patent nor the Shinomura Patent anticipates the claims of the '021 patent.  In response, SonoSite filed a cross-motion for summary judgment, arguing that the evidence is clear and convincing that the '021 Patent claims are anticipated by both the Pflugrath Patent and the Shinomura Patent.

Under 35 U.S.C. § 282, a patent is presumed valid and an attack on its validity requires proof of facts by "clear and convincing evidence or its equivalent, by whatever form of words it may be expressed." *American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350, 1360 (Fed. Cir. 1984). The "clear and convincing" standard of proof of facts is an intermediate standard which lies somewhere between "beyond a reasonable doubt" and a "preponderance of the evidence." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Although not susceptible to precise definition, "clear and convincing evidence" has been described as evidence which produces in the mind of the trier of fact "an abiding conviction that [the] truth of the factual contentions are 'highly probable.'" *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984).

Anticipation is a question of fact. *Advanced Display Sys. Inc. v. Kent State Univ.,* 212 F.3d 1272, 1281 (Fed. Cir. 2000) (citation omitted). To make such a finding on summary judgment, the Court must determine that no facts material to the question are disputed; or that even if all material factual inferences are drawn in favor of the non-movant, there is no reasonable basis on which the non-movant can prevail. *Cooper v. Ford Motor Co.,* 748 F.2d 677, 679 (Fed. Cir. 1984).

Section 102(b) provides that "a person shall be entitled to a patent unless the invention was patented or described in a printed publication ... more than one year prior to the date of publication." 35 U.S.C.§102(b) (2000). Accordingly, invalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could produce the invention without undue experimentation. *See Atlas Powder Co. v. Ireco Inc.,* 190 F.3d 1342, 1347 (Fed. Cir. 1999). Material not explicitly contained in the single, prior art document may

still be considered for purposes of anticipation if that material is incorporated by reference into the document. *See Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.,* 127 F.3d 1065, 1069 (Fed. Cir. 1997) (holding that material incorporated by reference into a document may be considered in an anticipation determination). Additionally, extrinsic information may be considered to explain the disclosure of a reference. The role of extrinsic evidence is to educate the decision-maker to what the reference meant to persons of ordinary skill in the field of the invention, not to fill gaps in the reference. *See Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.,* 726 F.2d 724, 727 (Fed Cir. 1984) (although additional references may serve to reveal what a reference would have meant to a person of ordinary skill, it is error to build "anticipation" on a combination of these references). If it is necessary to reach beyond the boundaries of a single reference to provide missing disclosure of the claimed invention, the proper ground is not §102 anticipation, but §103 obviousness. *Scripps Clinic and Research Found. v. Gentech, Inc.,* 927 F.2d 1565, 1577 (Fed. Cir. 1991).

Evaluating an anticipation claim requires a two step analysis. The first step of an anticipation analysis is claim construction. *See Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 714 (Fed. Cir. 1998). The Court, after hearing evidence and testimony at a *Markman* hearing, issued its claim construction on August 20, 2003. In its order, the Court construed the '021 patent as follows:

> 1.      "A transducer mounting assembly moveably connected to said body such that the distance between said assembly and said body can be adjusted by a user using only one hand"–An assembly sized to contain at least one ultrasound emitter or transducer, which is connected to the portable body such that a user of the apparatus can cause a change in the distance between the transducer mounting assembly and the portable body, using only one hand.
>
> 2.      "A portable body sized to be hand held"–A body that is sized such that it can be

9

held by hand and, so held, moved from one location to another.

    3.       "Ultrasound emitter"–At least one component, also known as a "transducer" or "emitter," and capable of emitting ultrasound energy.[1]

The second step of the analysis involves a comparison of the construed claim to the prior art. *See Key Pharms.*, 161 F.3d at 714.  To be anticipating, a prior art reference must disclose "each and every limitation of the claimed invention[,]...must be enabling[,] and [must] describe. . . [the]claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention."  *Helifix Ltd. v. Blok-Lok, Ltd.,* 208 F.3d 1339, 1346 (Fed. Cir. 2000)(quoting *In re Paulsen*, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994)).  If there is a genuine issue of material fact relevant to any one of these factors, summary judgment is not proper.  *Id.*

**The Pflugrath Patent**

    Neutrino first argues that the Pflugrath Patent does not anticipate any of the asserted claims of the '021 patent.[2]  First, Neutrino argues that the "single unit" embodiment of the Pflugrath Patent does not meet the limitations of paragraph (c) of independent claims 8, 20, and 25 of the '021 Patent because aperture 84, which is the transducer mounting assembly, is rigidly, rather than moveably, connected to the remainder of the instrument.  Neutrino alleges that this structural arrangement does not permit one to vary or adjust the distance between the portable

---

    [1]The Court held that the following terms did not need to be interpreted because they were unambiguous: 1) "mounted in," "mounted on," "housed within," and "top surface;" 2) "portable body comprising a top surface;" 3) "connected to" and "coupled to;" 4) "generating an instruction;" and 5) "display."

    [2]Neutrino submits as evidence the Declaration of Richard T. Redano.  The Court notes that the declaration mirrors the arguments presented by Neutrino in its motion.  Likewise, SonoSite submits as evidence the Declaration of Lauren Pflugrath, which mirrors the arguments presented in SonoSite's response to the motion and its cross motion for partial summary judgment.  Thus, for the purposes of this order, citations to the declarations have been omitted.

body and the transducer mounting assembly as required by paragraph (c) of independent claims 8, 20, and 25.

Neutrino further argues that the two-part unit embodiment does not expressly or inherently disclose the presence of the non-display portion of the ultrasonography generator or a Doppler ultrasound unit in the display unit.[3]  First, Neutrino asserts that paragraph (b) of independent claims 8, 20, and 25 of the '021 Patent comprises the limitation of an "ultrasonography generator mounted in said body and capable of measuring at least one or more hemodynamic parameters."   Furthermore, Neutrino argues that the phrase "said body" in paragraph (b) of independent claims 8, 20, and 25 refers to the "portable body" of paragraph (a) of independent claims 8, 20, and 25.  An embodiment of an ultrasonography generator is specified in dependent claims 11, 23, and 26 of the '021 Patent to be a "doppler ultrasound unit."

Neutrino's motion for summary judgment asserts that consideration of the lower unit of the two part embodiment to be the portable body of paragraph (a) of independent claims 8, 20, and 25 of the '021 Patent presents a structural arrangement that does not permit the user to vary or adjust the distance between the portable body and the transducer mounting assembly. Accordingly, Neutrino argues, under this interpretation of "portable body," the limitation of

---

[3]  The Pflugrath Patent contains the following description of the two-part unit:
> The instrument can be produced as a single unit, or in a preferred embodiment, the instrument is a two-part unit, one including a transducer, beamformer, and image processor and the other including a display and power source for both units.  In such a configuration, the transducer/processor unit can be manipulated with one hand while a cable between the two units enables the video to be shown on the display unit with the later unit is held or positions for optimal viewing of the ultrasound image.  The cable also provides energy for the transducer/processor unit from the display unit.

paragraph (c) of independent claims 8, 20, and 25 of the '021 Patent is not disclosed in the

Pflugrath Patent.  Likewise, Neutrino argues that if one considers the upper section of the two

part embodiment to be the portable body of paragraph (a) of independent claims 8, 20, and 25 of

the '021 Patent, then the non-display portion of the ultrasonography generator is not mounted in

the portable body, as required by paragraph (b) of claims 8, 20, and 25 of the '021 Patent.

Instead, Neutrino maintains that under this embodiment, ASICs 30 and 40 (the electronics

components) are contained in the transducer/processor unit.  As a result, Neutrino argues that the

limitation of paragraph (b) of independent claims 8, 20, and 25 of the '021 Patent is not

disclosed in the Pflugrath Patent.

        SonoSite, in response and in support of its cross motion for summary judgment, argues

that Neutrino's arguments fail to mention the most relevant disclosures of the '412 Patent.

Specifically, SonoSite argues that Neutrino's motion ignores the description of "other packaging

configurations" in the '412 Patent that describes exactly the feature Neutrino claims is not

described.  The description reads:

> [f]or instance, the front end ASIC 30, the digital signal processing ASIC 40, and
> the back end ASIC 50 could be located in a common enclosure, with the
> beamformer of the front end ASIC connected to different array transducers.  This
> would enable different transducers to be used with the digital beamformer, digital
> filter, and image processor for different diagnostic imaging procedures.  A display
> could be located in the same enclosure as the three ASICs, or the output of the
> back end ASIC could be connected to a separate device.

        SonoSite argues that one with ordinary skill in the art would conclude that this paragraph

describes that the array of transducers are moveably connected by a cable to the hand held

enclosure containing the electronics and display.  Additionally, SonoSite argues that the

description above depicts a hand held instrument with the ASICs, or electronics, located in the

same portable hand held enclosure as the display, and different transducers "connectable" to that enclosure, and a portable hand held enclosure in which both the ASICS and display are located. SonoSite argues that one skilled in the art would understand the description that the "front end ASIC [is] connectable to different array transducers" as meaning that the transducers are moveably connected to the hand held enclosure containing the electronics and display by a cable.

SonoSite further maintains that, although there were other ways to connect different array transducers at the time the Pflugrath Patent application was filed, a plug-in cable connection was how one skilled in the art would understand the description in the patent.  SonoSite argues that Claims 11 an 17 of the Pflugrath Patent support the conclusion that the Pflugrath Patent discloses a transducer array that is moveably connected by a cable to the hand held enclosure containing the electronics and display.  Specifically, SonoSite argues that Claim 11 specifies that the array transducer and beamformer are located in one or more enclosures, and Claim 17 that the image processor (ASIC 40) and beamformer are located in the same enclosure.  Thus, SonoSite argues, if the array transducer and image processor or electronics are located in more than one enclosure, then the array transducer described in the Pflugrath Patent specification would be moveably connected by a cable to the portable body in which the electronics and display are located.

**The Shinomura Patent**

Neutrino similarly argues that the Shinomura Patent does not anticipate any of the asserted claims of the '021 patent. Neutrino argues that the Shinomura Patent discloses measuring the hemodynamic parameter of "blood velocity" but that the examples of the hemodynamic parameters provided in the '021 Patent are blood flow velocity, blood pressure, and blood temperature.  Neutrino maintains that the Shinomura Patent discloses that blood

13

velocity is determined by a "data processor unit provided separately from the main system."

Furthermore, Neutrino argues that the Shinomura Patent does not disclose, either expressly or

inherently, the limitation in paragraph (d) of independent claim 8 that the "ultrasound emitters

are mounted in said assembly along a curved path."  Instead, Neutrino maintains, the Shinomura

Patent discloses that "array transducers 21" are incorporated in scanning probe 1A.  According

to Neutrino's argument, each of the probes comprises a non-curved edge along which ultrasound

transducers or emitters could be mounted along a straight line, rather than "along a curved path

as required by the limitation of paragraph (d) of independent claim 8.

        Finally, Neutrino argues that dependent claims 11, 23, and 26 of the '021 Patent are

directed to a specific embodiment of an ultrasonography generator capable of measuring at least

one or more hemodynamic parameters, known as a Doppler ultrasound unit, but that the

Shinomura Patent does not even mention "doppler."  Neutrino maintains that at the time the '021

Patent and the Shinomura Patent were filed, persons skilled in the medical ultrasound art were

familiar with methods of measuring hemodynamic parameters, such as blood flow velocity, other

than the use of doppler measurement, and that one such method is known as "time delay

correlation" ("TDC").  Thus, Neutrino argues that the fact that the Shinomura Patent discloses

the measurement of blood flow velocity does not mean that it inherently discloses a doppler

ultrasound unit because there were other known methods for measuring blood flow velocity at

the time the application for the Shinomura Patent was filed.

        SonoSite, in response and in support of its cross motion for summary judgment, argues

that Neutrino has again failed to mention the most relevant portion of the reference.

Specifically, SonoSite argues that Neutrino attempts to ignore that the main systems 2A and 2B

both include signal processing parts that perform the exact function of an ultrasonography generator and are mounted in the portable bodies.  SonoSite argues that one skilled in the art would conclude that the signal processor units would have to measure blood velocity because even though they only process a minimum ultrasonic image, they still have to acquire the ultrasound signals and measure frequency shift in order to display that minimum image.   Thus, SonoSite concludes, the Shinomura Patent inherently discloses to a person of ordinary skill in the art that the signal processing units measure blood flow and that the display is capable of displaying that hemodynamic parameter.  As a result, SonoSite argues that the Shinomura Patent anticipates claims 8, 20, and 25 of the '021 Patent.

With regard to Neutrino's argument concerning TDC, SonoSite next argues that TDC is nothing more than a form of Doppler.  SonoSite argues that one skilled in the art would read the Shinomura Patent as inherently disclosing the use of Doppler because it discusses measuring blood velocity and Doppler was the accepted way of measuring blood velocity at the time the Shinomura Patent was filed.

The Court finds that with regard to both the Pflugrath Patent and the Shinomura Patent, there is a sufficient question of fact to defeat the cross motions for summary judgment.  Both Neutrino and SonoSite support their arguments through the use of declaration testimony which supports each of the assertions made by the respective parties.  As the Court noted above, in the discussion of the Motion to Strike the Declaration of Richard Redano, there has been no evidence presented in the context of this briefing as to the level of knowledge possessed by the hypothetical person ordinarily skilled in the art.  As such, the Court finds that the conflicting declarations of Richard Redano, offered by Neutrino, and Lauren Pflugrath, offered by SonoSite,

create a question of fact on the issue of anticipation.  As such, both motions for summary judgment on the issue of invalidity are DENIED.

**Conclusion**

For the reasons stated above, SonoSite's Motion to Strike the Declaration of Richard Redano (Dkt. # 207) is hereby DENIED.  Further, Neutrino's Motion for Partial Summary Judgment on the Issue of Invalidity (Dkt. # 182) and SonoSite's Cross Motion for Partial Summary Judgment on the Issue of Invalidity (Dkt. # 208) are also DENIED.

It is so ORDERED.

Signed this 31st day of August, 2005.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE