UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NEUTRINO DEVELOPMENT CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-01-2484 |
| SONOSITE, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment of Invalidity Based on New Matter (Dkt. # 279). The Court, after reviewing the motion, the responses of the parties and the relevant law, is of the opinion that the motion should be GRANTED.

### Factual and Procedural Background

This is an action for patent infringement brought by Neutrino Development Corporation ("Neutrino") against Sonosite, Inc. ("Sonosite"). Neutrino is the owner of United States Patent No. 6,221,021 ("the '021 patent"). Neutrino alleges that four devices manufactured and marketed by Sonosite, the Sonosite 180, SonoHeart, Sonosite 180 PLUS, and the SonoHeart PLUS, infringe on the '021 patent.

The '021 patent application was filed on May 30, 1999, and claimed priority to an earlier patent application, Application Serial No. 08/926, 209, filed on September 9, 1997, which was issued as U.S. Patent No. 5,947,901 ("the '901 patent application" and the "'901 patent," respectively). The '021 patent application, entitled "Method and Apparatus for Penile Hemodynamic Stimulation, Monitoring, and Drug Delivery Acceleration," described a device for

"stimulating and/or monitoring hemodynamic activity, such as blood flow, in a penis." *U.S. Patent No. 6,221,021* at col. 1, ll. 15-16. On February 4, 2000, the U.S. Patent & Trade Office ("PTO") rejected all of the claims in the original '021 Patent Application. In May 2000, Redano amended the pending '021 patent application. Part of that amendment became the claims of the '021 patent, which was issued on April 24, 2001.

Defendant Sonosite began as a division of ATL Ultrasound, Inc., and was spun off as a public company in April 1998. Sonosite unveiled its first public product in the realm of hand-carried ultrasound devices, the Sonosite 180, on May 17, 1999. Sonosite began selling the device in June 1999. In January 2000, Sonosite launched its second product, the SonoHeart. In April 2001, Sonosite launched a new generation of these two devices with its introduction of the SonoSite 180 PLUS and the SonoHeart PLUS.

On July 24, 2001, Neutrino filed this action, alleging that Sonosite had illegally used Redano's invention and infringed the '021 patent. Sonosite answered the complaint on August 14, 2001, asserting that the '021 patent claims are not infringed and are invalid, and counterclaimed for declaratory judgment of non-infringement and invalidity.

On February 20, 2002, after extensive briefing, the Court held a one-day *Markman* hearing on claim construction. On October 9, 2002, the Court stayed all proceedings pending the Court's *Markman* and summary judgment rulings. The Court issued its claim construction on August 21, 2003. Subsequently, the Court granted Neutrino's Motion for Summary Judgment on Infringement (Dkt. #136) finding that Sonosite's devices literally infringed the '021 patent and that the reverse doctrine of equivalents was not applicable (Dkt. #162).

**Summary Judgment Standard**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

Patent cases are as amenable to summary judgment as any other case when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 (1997); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576-77 (Fed. Cir. 1989); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985). However, a court should apply a somewhat more exacting scrutiny to a motion for summary judgment based on invalidity because there is a statutory presumption that an issued patent is valid. This presumption "is based in part on the expertise of patent examiners presumed to have done their jobs." *Brooktree Corp. v. Adv. Micro Devices, Inc.*, 977 F.2d 1555, 1574(Fed. Cir. 1992). The Federal Circuit has held that "'the fact that the Patent Office allows . . . an amendment without objection thereto as new matter (within the meaning of Title 35 U.S.C. § 132) is entitled to an especially weighty presumption of correctness.'" *Id.* (quoting *In re Smythe*, 480 F.2d 1376, 1385 n.5 (C.C.P.A. 1973). The Court has taken this strong presumption into due consideration.

## Analysis

The new matter prohibition of 35 U.S.C. § 132 "serves to ensure that the patent applicant was in full possession of the claimed subject matter on the application filing date." *Turbocare Division of Demag Delaval Turbomachinary Corp. v. General Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001). The relevant portion of § 132(a) reads, "[n]o amendment shall introduce new matter into the disclosure of the invention." When an applicant amends the specification and/or claims after the original filing date, as Richard Redano did in this case, "the new claims or other added material must find support in the original specification." *Id.* (citing *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000). The relevant inquiry is whether one of ordinary skill in the art would have

determined from the original application that the applicant was in possession of the amended subject matter at the time of the original application filing date. *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985). In simpler terms, an amendment may only clarify, not change, the written description in the original patent application.

Sonosite contends that the claims of the '021 patent that are the subject of this lawsuit[1] are invalid because the hand-held size of the ultrasonography generator was "new matter" under § 132 introduced through amendments to the specifications and claims of the '021 patent application. Sonosite contends that the amendments specifying that the ultrasonography generator is sized to be hand-held found support neither explicitly nor inherently in the original patent application. Neutrino argues in response that (1) the diagrams in the original patent application indicate by proportion that the ultrasonography generator would be sized small enough to be hand-held, and (2) a genuine issue of material fact exists as to whether a person of ordinary skill in the art would have readily understood U.S. Pat. No. 5,578,060 ("Pohl patent"), incorporated by reference into the '021 patent application, to describe a hand-held ultrasonography generator. The Court will consider each of these arguments below.

Neutrino contends that the hand-held size of the ultrasonography generator was disclosed *inherently* in the original application. The Federal Circuit has held that "[i]n order for a disclosure to be inherent, 'the missing descriptive matter must necessarily be present in the [original] application's specification such that one skilled in the art would recognize such a disclosure." *Turbocare*, 264 F.3d at 1119 (quoting *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998).

---

[1] Neutrino has asserted that Sonosite is infringing claims 8-14 and 20-27. See Dkt. #75, p.4. Of those, claims 8, 11-13, 20, 21, 23-27 include (directly or by reference) the amended language indicating that the ultrasonography generator is sized to be hand-held.

Neutrino argues that the proportions implied by the diagrams in the original application and in the Pohl patent necessarily lead one of ordinary skill in the art to conclude that the ultrasonography generator was intended to be small enough to be hand-held. In response, Sonosite argues that the possibility that the ultrasonography generator depicted in the diagrams and disclosed in the Pohl patent *could* be sized to be hand-held is not sufficient to qualify as inherent disclosure. Based on the analysis adopted by the Federal Circuit, the Court agrees with Sonosite that one of ordinary skill in the art must conclude that the diagrams and/or the Pohl patent *necessarily* disclose a hand-held ultrasonography generator. *Turbocare*, 264 F.3d at 1119. The conclusion that the diagrams or Pohl patent *might* disclose a hand-held ultrasonography generator is insufficient to stand as inherent support for an application amendment. To survive this motion for summary judgment, the diagrams must unequivocally depict an ultrasonography generator sized to be hand-held and/or the Pohl patent must explicitly disclose an ultrasonography generator that is sized to be hand-held. In the following paragraphs, the Court will review the specification diagrams and the Pohl patent to determine whether any reasonable jury could determine that a person of ordinary skill in the art of designing, testing, and building medical ultrasound devices could conclude that the diagrams and/or patent incorporated by reference necessarily disclose a hand-held ultrasonography generator.

**1.     Patent Application Diagrams**

Sonosite argues that the drawings in the original '021 patent application do not disclose the size of the ultrasonography generator because (1) patent drawings cannot be relied upon to show particular sizes where the specification is silent on the issue of size, and (2) the proportions loosely depicted in the drawings, if taken literally, would produce an untenable result. Neutrino objects to the applicability of the cases cited by Sonosite for the proposition that drawings cannot establish

6

sizes on the grounds that these cases do not preclude reliance on drawings to show general proportions as opposed to specific dimensions. Neutrino contends that the original specification explicitly discloses a hand-held transducer housing (a fact that Sonosite does not dispute) and the drawings show the proportionate size of each component of the claimed invention in relation to the transducer housing. In Figure 2, reproduced below, the ultrasound generator and the ultrasonography generator are smaller than the hand-held transducer housing.[2]



FIG. 2

Neutrino contends that one of ordinary skill in the art would understand from this drawing that the ultrasonography generator is proportionately smaller than the hand-held transducer housing and, therefore, is itself sized to be hand-held. However, Figure 2 contains neither a scale nor dimensions and under well-established Federal Circuit precedent, "patent drawings do not define the precise proportions of the elements and may not be relied upon to show particular sizes if the specification

---

[2] Unit 32 of Figure 2 depicts the ultrasonography generator. The component comprised of units 10, 18, and 24 represents the hand-held transducer housing.

is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l*, 222 F.3d 951, 956 (Fed. Cir. 2000). Neutrino argues that *Hockerson-Halberstadt* and other similar cases do not apply to depictions of general proportions and "relative size."[3] Neutrino also argues that the '021 patent application specification was not "completely silent" on the issue of relative size because it incorporated the Pohl patent by reference. The Court rejects the latter argument on the grounds that the requirement that the specification not be "completely silent" on the issue of size in order to imply size in a drawing necessitates an explicit disclosure in the specification, not an implicit disclosure such as another patent incorporated by reference. To that end, the Pohl patent also lacks any explicit reference to the size of the ultrasonography generator. The implication of size within another patent incorporated by reference is insufficient to support contentions about the relative size of components depicted in an unspecific drawing. No reasonable jury could determine that a person of ordinary skill in the art would have readily recognized the size (specific or relative) of the ultrasonography generator from the drawings in the '021 patent.

Furthermore, the Court does not believe that the Federal Circuit in *Hockerson-Halberstadt* intended for "precise proportions" to carry a meaning distinct from "relative size." The issue on appeal in *Hockerson-Halberstadt* was "whether the district court correctly construed the term 'central longitudinal groove to require that the width of the groove' must be less than the combined width of the fins." *Hockerson-Halberstadt*, 222 F.3d at 954. The defendant in *Hockerson-Halberstadt* made the argument that statements submitted by the inventor during the prosecution about the width of the groove conflicted with the drawings in the specification of the original patent application and, therefore, the conflicting prosecution history should not be used to construe the

---

[3] Dkt. #292, p.9.

claims. The Federal Circuit rejected the defendant's argument on the grounds that the patent "is devoid of any indication that the *proportions* of the groove and fins are drawn to scale." *Id.* at 956 (emphasis added). The Federal Circuit determined that the drawings could not be relied upon to establish the size of the groove *relative to* the fins. Ultimately, the Federal Circuit held that "a reasonable competitor, being aware that figures in a patent are not drawn to scale unless otherwise indicated, would" have accepted the specific statements about size in the prosecution history.[4] The Court finds that it was precisely the sort of argument that Neutrino attempts to advance here that the Federal Circuit sought to preclude in *Hockerson-Halberstadt*. Put simply, the Federal Circuit prohibits reliance upon unspecific drawings to support claim limitations.[5] Therefore, the Court finds that no reasonable juror could conclude that a person of ordinary skill in the art would have relied upon the relative sizes depicted in the specification drawings of the original '021 patent application to determine the size of the ultrasonography generator.

**2.     The Pohl Patent**

---

[4] The Court notes that *Hockerson-Halberstadt* was about claim construction, not the issue of "new matter." As in the present case, the district court in *Hockerson-Halberstadt* would not have evaluated the propriety of the amended language under § 132 while issuing the claim construction. The process of claim construction assumes the validity of the issued patent. The defendant in *Hockerson-Halberstadt* made the argument that a particular claim should be interpreted in light of the apparent proportions in the specification drawings. Because specific language in the prosecution history explained the relative size of the groove, the court's analysis pitted the prosecution disclaimer against the drawings. However, had there been no statements about relative size in the prosecution history, the plaintiff still would not have been able to rely on the specification drawings to establish relative size. The outcome in this alternative scenario would have been a claim construction without any specification about size.

[5] Because the drawings in the original patent application cannot support the amendment pertaining to the hand-held size of the ultrasonography generator, it is not necessary to explore whether the proportions offered by Neutrino are so factually untenable as to warrant summary judgment. The Court does, however, note that the relative sizes depicted in Figure 2, if taken literally, would suggest an ultrasonography generator not merely hand-held, but small enough to fit in the palm of one's hand.

Sonosite contends that the Pohl patent does not disclose an ultrasonography generator sized to be hand-held on the grounds that (1) the Pohl patent does not disclose an ultrasonography generator at all, and (2) even if unit 14 depicted in Figure 1 of the Pohl patent can be treated as an equivalent of the ultrasonography generator in the '021 patent, the device disclosed in the Pohl patent is not *necessarily* sized to be hand-held. The Court will address the latter argument first because it is dispositive.

The component identified in the Pohl patent as analogous to the ultrasonography generator in the '021 patent is depicted as unit 14 in Figure 1 of the Pohl patent. The Pohl patent states that Figure 1 depicts "a relatively large physical therapy apparatus."[6] However, the description also states that the preferred embodiment depicted in Figure 1 could "be much smaller so as to be portable without departing from the spirit and scope of the present invention."[7] If a device sized small enough to be portable falls within the scope of the Pohl patent, it follows that unit 14, which is a component of the device, can potentially be sized small enough to be portable without broadening the scope of the patent. As an initial matter, Sonosite argues that being sized to be "portable" is not equivalent to being sized to be hand-held. Sonosite contends that portable could mean "capable of being moved from place to place" on a cart.[8] However, even if the Court accepts that a person of ordinary skill in the art would understand that unit 14 is equivalent to the ultrasonography generator in the '021 patent and that "portable" can include a size small enough to be hand-held, the Pohl patent still fails to disclose a hand-held ultrasonography generator sufficient to inherently support that limitation as an amendment to the original '021 patent application. The

---

[6] Dkt. #279, Exhibit 11 (Pohl patent).

[7] *Id.*

[8] Dkt. #279, p.12.

Federal Circuit has specified that "[t]he missing descriptive matter *must necessarily be present* in the [original] application's specification such that one skilled in the art would recognize such a disclosure." *Turbocare*, 264 F.3d at 1119 (emphasis added). The possibility that a variant of the device depicted in Figure 1 could be sized "much smaller" so as to be "portable" cannot support the conclusion that unit 14 in Figure 1 is necessarily hand-held. The Federal Circuit has been instructive on this point:

> It is true that the specification "does not have to provide *in haec verba* support for the claimed subject matter at issue." *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed.Cir. 2000) (citing *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1570 (Fed.Cir. 1996)). Nonetheless, the disclosure must clearly convey to one skilled in the art that the inventor was in possession of the invention. "Put another way, one skilled in the art, reading the . . . disclosure, must *immediately* discern the limitation at issue in the claims." *Id.* (citing *Waldemar Link, GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556, 558 (Fed.Cir. 1994)) (emphasis added). Immediacy is important because it guarantees that the insight belongs to the author of the specification and appears at once to the intelligent and educated reader. It is a different matter, however, if the language of the specification triggers an insight that belongs to the reader, who, having thought about the extent of what was actually disclosed by the specification, concludes, "This also could be done another way." In that circumstance, the reader is conceiving of an "obvious variant" of what is actually described, and that is not enough to satisfy the written description requirement. See *Lockwood*, 107 F.3d at 1572.

The Court finds that sizing unit 14 to be hand-held (as opposed to more generally "portable") qualifies as "an obvious variant" of the explicit disclosures in the specifications of the Pohl patent. An "obvious variant" of a patent incorporated by reference cannot provide support for an application amendment. To allow so many possible permutations of a given device to fall under the umbrella of inherent support would undermine the purpose of the written description requirement. Therefore, the Court finds that no reasonable juror could conclude that the Pohl patent provides support for the amendments made to the '021 patent application.

## Conclusion

The Court finds that the claims covering the improperly amended subject matter outlined

above are invalid for new matter. Therefore, Defendant's Motion for Summary Judgment of Invalidity Based on New Matter (Dkt #279) is GRANTED. Accordingly, all remaining motions are denied as moot.

Furthermore, the finding that independent claims 8, 20, and 25 are invalid for new matter compels the Court to reverse claim construction (b) in its Markman Order (Dkt. #125) and consequently to reverse the finding of literal infringement in the Court's Order of September 29, 2004 (Dkt. #162). Because Plaintiff's claims of infringement under 35 U.S.C. § 271(a) and (b) rely upon the inclusion of the invalid claims, the Court is also of the opinion that Plaintiff's claims for direct infringement and inducing infringement should be DISMISSED with prejudice.

It is so ORDERED.

A final judgment shall be issued separately.

Signed this 21st day of March, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE