UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NEUTRINO DEVELOPMENT CORPORATION, § § § | |
| Plaintiff, § § | |
| v. § | CIVIL ACTION NO. H-01-2484 |
| § | |
| SONOSITE, INC., § § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Exceptional Case and Attorneys' Fees (Dkt. #368). The Court, after reviewing the motion, the responses of the parties and the relevant law, is of the opinion that the motion should be DENIED.

### Factual and Procedural Background

In May of 1999, Richard Redano ("Redano") filed a patent application ("the '021 patent application") with the Patent and Trademark Office ("PTO") disclosing a "method and apparatus for penile hemodynamic stimulation, monitoring, and drug delivery acceleration."[1] The original application contained 20 claims.  In November 1999, Redano wrote a letter to Dr. Juin-Jet Hwang, Chief Technology Officer of Sonosite Inc. ("Sonosite"), offering to disclose the claims of the '021 patent application upon execution of a nondisclosure agreement, summarizing the purpose of the invention to be patented, and inquiring as to whether Sonosite would be interested in licensing the

---

[1] Defendant's Motion, Exhibit 5, CW 1742.

1

'021 patent once issued.[2] Redano received an email response from Dr. Hwang indicating that Sonosite was not interested in therapeutic ultrasound technology. In response, Redano sent a facsimile to Dr. Hwang cautioning that "[o]nly time will tell the degree to which the pending applications will cover imaging technology."[3]

On February 4, 2000, the PTO rejected all 20 claims of the '021 patent application on various grounds.[4] On May 4, 2000, Redano filed an "Amendment and Response to First Action" in which he added new claims 21-37.[5] In new claim 30, the language "sized to be hand held" appeared for the first time with regard to the ultrasonography generator component of the invention. On July 19, 2000, the PTO notified Redano that he had to elect between prosecution of claims 1-2, 8-9, 11-12, 14-16, 18, and 21 (pertaining to the therapeutic device and methods) or claims 22-37 (pertaining to the diagnostic device).[6] On July 27, 2000, by way of telephone interview, Redano elected to prosecute claims 22-37 without traverse.

On July 31, 2000, the PTO rejected claims 22-37 "under the doctrine of obviousness-type double patenting as being unpatentable over claims 1-20 of U.S. Patent No. 5931783." This action, however, was overcome in November 2000 when Redano filed a terminal disclaimer with regard to the '783 patent (also held by Redano). At that time, Redano also amended the claims of the '021 patent application by cancelling claims 29 and 37, and adding new claims 38-50. On April 24, 2001,

---

[2] Defendant's Motion, Exhibit 11, P 2877.

[3] *Id.* at P 2885.

[4] Defendant's Motion, Exhibit 5, CW 1777.

[5] *Id.* at CW 1786.

[6] *Id.* at CW 1799.

the '021 patent issued with 27 claims taken from portions of application claims 22-50.

On July 24, 2001, Neutrino Development Corp. ("Neutrino"), which had licensed the '021 patent from Redano, filed the present infringement action against Sonosite. On August 29, 2001, Neutrino filed a motion for a preliminary injunction (Dkt. #8), which the Court denied by Order of October 4, 2001 (Dkt. #30). On February 20, 2002, after extensive briefing, the Court held a one-day *Markman* hearing and subsequently issued an Order on August 20, 2003 construing certain claims of the '021 patent (Dkt. #125). Based on that claim construction, the Court later found that four devices manufactured and marketed by Sonosite (the Sonosite 180, SonoHeart, 180 PLUS, and the SonoHeart PLUS) literally infringed the '021 patent (Dkt. #162). However, after considering the prosecution of the '021 patent in greater detail, the Court found that Redano had improperly added "new matter" when the '021 patent application was amended in May of 2000. Consequently, the Court found that certain claims of the '021 patent at the center of this lawsuit are invalid for new matter and entered a final judgment in favor of Sonosite (Dkt. #363 and Dkt. #364).

Sonosite has filed the present post-judgment motion requesting that the Court find that this is an "exceptional case" under 35 U.S.C. § 285 and award attorneys fees and certain non-taxable costs to Sonosite as the prevailing party.

## Analysis

35 U.S.C. § 285 allows a court to award attorneys fees to a prevailing party in an "exceptional case."[7] An award of attorney fees under § 285 involves a two-part determination. First, a district court must determine whether the prevailing party has proven an exceptional case

---

[7] 35 U.S.C. § 285:
The court in exceptional cases may award reasonable attorneys fees to the prevailing party.

by clear and convincing evidence. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003) (citing *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 669 (Fed. Cir. 2000)). Second, if the district court finds that the case is exceptional, it must then determine whether an award of attorney fees is appropriate. *Id.* An award of attorneys fees is appropriate "where it would be *grossly unjust* that the winner be felt to bear the burden of his own counsel." *J.P. Stevens Co. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047, 1052 (Fed. Cir. 1987) (emphasis in original).

The "clear and convincing" standard of proof is an intermediate standard which lies somewhere between "beyond a reasonable doubt" and a "preponderance of the evidence." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Although not susceptible to precise definition, "clear and convincing evidence" has been described as evidence which produces in the mind of the trier of fact "an abiding conviction that [the] truth of the factual contentions are 'highly probable.'" *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984); *see also Shafer v. Army & Air Force Exchange Srvc.*, 376 F.3d 396 (5th Cir. 2004) (instructing that clear and convincing evidence is "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts' of the case." (quoting *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992))). For purposes of the motion at bar, Sonosite bears the burden of presenting clear and convincing evidence that Neutrino's conduct makes this an "exceptional case."

"Types of conduct that might support a showing of exceptional circumstances include willful infringement, inequitable conduct before the Patent and Trademark Office, litigation misconduct, and vexatious or unjustified litigation or frivolous suit." 69 C.J.S. PATENTS § 532; *see also Evident*

4

*Corp. v. Church & Dwight Co., Inc.*, 399 F.3d 1310, 1315 (Fed. Cir. 2005) (finding that "[e]xceptional cases are normally those involving bad faith litigation or those involving inequitable conduct by the patentee in procuring the patent"). Sonosite alleges that "Redano is guilty of inequitable conduct because of his actions in prosecuting the '021 Patent, and his litigation misconduct— directly and through the actions of his attorneys and agents— for vexatious litigation tactics associated with the filing and aggressive pursuit of this litigation on a patent that he knew he had obtained illegally."[8] The Court will address the allegations pertaining to the period of patent prosecution and the present litigation separately.[9]

A.      *Inequitable Conduct During the Prosecution of the '021 Patent*

Sonosite contends that Redano "commit[ted] fraud on the U.S. Patent & Trademark Office ("PTO") by broadening his patent application" to cover an ultrasonography generator that is sized

---

[8] Defendant's Motion, p. 2.

[9] In its response to Sonosite's motion, Neutrino argues that the doctrine of *Res Judicata* and/or the Plaintiff's jury demand bars the Court from making post-judgment findings of fact to make a determination of "exceptional case." This antic contention is completely without foundation. The Federal Rules of Civil Procedure specifically provide that the district court shall make findings of fact and conclusions of law when awarding attorneys fees post-judgment. *See* FED. R. CIV. P. 54(d)(2). There are many instances in which the court makes findings of fact when disposing of certain post-judgment claims. An apt example would be the disposition of a motion for relief from judgment under Federal Rule 60(b)(3) based on the fraud of a party. In such a case, the court would make factual findings to determine whether fraud was committed. Similarly, in a motion for post-judgment relief based on an allegation of inequitable conduct, the court is the finder of fact and arbiter of law. In making such post-judgment factual findings, the court can go so far as to permit the parties to conduct limited discovery on the issues. Therefore, there is no basis for the Court to entertain Neutrino's request for a trial on the issue of inequitable conduct. Furthermore, *Res Judicata* is inapplicable to a single action. In the event that Neutrino has confused the doctrines of claim and issue preclusion, the Court notes that the related doctrine of issue preclusion is inapplicable where, as here, the issue at bar has never been adjudicated. An order of final judgment does not limit the Court's ability to make factual findings on a motion for attorneys fees.

to be hand-held.[10] More specifically, Sonosite argues that Redano intentionally added new matter to the amendments of the '021 patent application with knowledge that such new matter would invalidate the patent. Sonosite further alleges that Redano intentionally misled the patent examiner by falsely representing that there was "no new matter" in the amendments to the '021 patent. In response, Neutrino argues that Redano withheld nothing from the patent examiner and he thereby complied "with all the rules and regulations and discharge of his duty of candor."[11] Neutrino further argues that "Mr. Redano's state of mind has been, at all times prior to the filing of the amendment in question, through the present, to fully comply with PTO rules and to fully, completely and promptly discharge his duty of candor."[12]

In order "[t]o prove inequitable conduct in the prosecution of a patent, [the defendant] must have provided evidence of affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1366 (Fed. Cir. 2001). When making a finding of "exceptional case" under § 285, the inequitable conduct analysis is performed in two steps: (1) the court must make a determination of whether the misrepresentation to the PTO was material and motivated by an intent to deceive, and (2) the court must weigh the level of materiality against the degree of intent in light of all the circumstances to determine whether the patentee's conduct was so culpable that the patent was issued under a cloud of deception.

The fact that the representation in the remarks portion of the amendments made to the '021

---

[10] Plaintiff's Motion, p.2.

[11] Plaintiff's Surreply, p. 9.

[12] *Id.* at 11.

patent that the amendments contained "no new matter" was false is no longer in contention in light of the Court's ruling of March 21, 2006 (Dkt. #363).  Therefore, the Court turns immediately to the materiality of that misrepresentation.  There are two related standards under which a court can determine that a representation or omission during a patent prosecution was "material."  The first standard, called the "reasonable examiner standard," asks whether "a reasonable examiner would have considered such [representation or omission] in deciding whether to allow the patent application." *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003).  The second standard adopted by the Federal Circuit comes directly from the PTO's Rule 56, which describes the duty of candor and good faith.  Rule 56 reads as follows:

> [I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
> (i) Opposing an argument of unpatentability relied on by the Office, or
> (ii) Asserting an argument of patentability.
> A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

37 C.F.R. § 1.56(b) (2004).  See *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1129-33 (Fed. Cir. 2006) (evaluating materiality under PTO Rule 56).

Neutrino contends that the materiality of the "no new matter" statement is low because, at all times, the patent examiner had before him all necessary material to determine the patentability of the '021 application.  Neutrino argues that the examiner was free to disagree with Redano's determination that there was no new matter and that the evidence indicates that the examiner did in fact review the specifications and the Pohl patent which served as the basis for the Court's

determination that the patent was invalid. In its Reply, Sonosite argues that the statement was "clearly" material because "if Redano had told the truth, the patent would never have issued."[13] The Court is of the opinion that Sonosite has confused the materiality and intent inquiries. The question behind the materiality of Redano's statement to the PTO is not whether the PTO would have issued the '021 patent if Redano disclosed that there was new matter in the amendments, but whether the misstatement that there was not new matter could have caused the PTO to issue an invalid patent. Sonosite's formulation of the materiality inquiry assumes Redano's intent. "[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) (citation omitted).

The Court finds that based on either standard of materiality adopted by the Federal Circuit, Redano's statement that there was "no new matter" in the '021 patent amendments was not material. First, the Court finds that a reasonable examiner would not have relied on Redano's statement to determine that there was not new matter in the amendments. As Neutrino has indicated, the patent examiner had before him all material relevant to making an independent determination of new matter as he was required to do.[14] Second, the Court finds that the statement was cumulative to other correct material already of record pertaining to the question of new matter and the statement was not inconsistent with any other position taken by Redano during the prosecution. As such, the statement that there was "no new matter" in the '021 patent application amendments was not material under either the "reasonable examiner" standard or PTO Rule 56.

---

[13] Sonosite's Reply, pp. 12-13.

[14] The statement that there is "no new matter" contained in a patent amendment is no more material than a statement by a patentee that a patent is "valid." Such representations made by a patentee would not bear upon any reasonable patent examiner's evaluation of a patent application. Such statements are legal conclusions outside of the purview of a patentee.

Furthermore, even if the statement was material, the Court finds that Sonosite has failed to present clear and convincing evidence that Redano intended to deceive the PTO. In order for the Court to decide that this case is "exceptional" under § 285, Sonosite must present clear and convincing evidence of "actual wrongful intent . . . or of gross negligence." *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 473, (Fed. Cir. 1985). The gross negligence standard has been defined as "requiring willful, wanton, or reckless misconduct, or evidence of 'utter lack of all care.'" *Id.* (quoting PROSSER AND KEETON, THE LAW OF TORTS, § 34 (4th Ed.1984)). Thus, "conduct short of fraud, but in excess of simple negligence is sufficient for deciding that the case is 'exceptional' under § 285." *Id.* (citing *Mayview Corp. v. Rodstein*, 620 F.2d 1347 (9th Cir.1980)).

As evidence that Redano intended to deceive the PTO, Sonosite presents (1) the fact that Redano is a seasoned patent attorney who would have known the amendments contained new matter, and (2) the chronology of communications between Redano and Sonosite and other third parties indicating that Redano intended to broaden the '021 patent claims to cover certain technology being developed and marketed by Sonosite. In response, Neutrino argues that, at all times, it was Redano's intention to "completely and promptly discharge his duty of candor" to the PTO.[15] Neutrino emphasizes the fact that Redano stated his intention to disclose all pertinent art to the PTO in a letter to Dr. Solash, the thoroughness of Redano's Information Disclosure Filings, and the fact that Redano submitted the "new matter" amendment in several different filings with the PTO. Indeed, Redano testified that he "took steps to force the examiner to look at the new language twice."[16] Although there is considerable evidence that Redano intended for his portfolio of

---

[15] Neutrino's Surreply, p. 11.

[16] Neutrino's Response, p. 12, Deposition Testimony of Richard Redano.

9

ultrasound patents to cover hand-held ultrasound technology, there is scant evidence that he intended to deceive the PTO in order to achieve this end.[17]

Sonosite further contends that Redano's deceitful intent can be discerned from the fact that he "buried" the new matter language into the amendments. However, the Court agrees with Neutrino that there is no evidence that the new matter language was buried. The order and structure of the amended claims seem perfectly rational based on the events of the prosecution and Redano's stated intention to patent hand-held ultrasound technology. Despite Redano's particular knowledge as a patent attorney, there simply is not clear and convincing evidence that Redano knew or should have known that the amended new matter was not supported by anything in the patent application. Therefore, the Court finds that Sonosite has not met its burden of producing clear and convincing evidence that Redano intended to deceive the PTO.

B.   *Bad Faith Litigation*

In its motion, Sonosite makes allegations of both vexatious or unjustified litigation and litigation misconduct. Sonosite contends that because Redano knew that the '021 patent was invalid for new matter, he brought suit against Sonosite in bad faith. Sonosite further contends that Redano, in concert with Neutrino's attorneys and other third parties, improperly communicated with stock analysts and reporters about this litigation in order to coerce Sonosite into a settlement. In response,

---

[17] The Court notes that the chronology of communications offered by Sonosite merely establishes that it was Redano's aim to acquire a patent that could be licensed to an existing developer of ultrasound technology. Although somewhat out-of-step with the original purpose of patent protection, the practice of trading in intellectual property without an intention to invest in research and development is today neither rare nor illegal. This practice, sometimes termed "patent trolling," is criticized by some as a destructive abuse of the patent system, and justified by others as increasing the liquidity of intellectual property. The Court has no reason to engage in this debate here, but notes that it limited its treatment of the "patent trolling" evidence to a possible motive to deceive as opposed to direct evidence of deceptive conduct.

Neutrino sets forth 6 reasons why the "case was not 'clearly baseless'":

> (1) the fact that the USPTO disagrees, having examined the patent application and approved [the '021 patent];
> (2) the important presumption of patent validity;
> (3) the good faith pre-filing investigation and other efforts taken prior to filing this action;
> (4) this Court's previous two denials of SonoSite's Motions for Summary Judgment of invalidity;
> (5) this Court's Summary Judgment against SonoSite of infringement; and
> (6) SonoSite's own stipulation (in the submitted Joint Pre-Trial Order, willingly signed by the attorney-in-charge for both SonoSite and Neutrino) that the subject products did literally infringe the asserted patent (as construed by the Court).[18]

Neutrino also flatly denies Sonosite's allegations that it, or anyone acting on its behalf, attempted to coerce Sonosite into a settlement. Neutrino contends that all communications made with analysts or reporters were made in good faith and accurate. Sonosite does not dispute the accuracy of the information conveyed.

Based on the Court's finding above that Sonosite has failed to present clear and convincing evidence that Redano knew the '021 patent was invalid for new matter, it follows that there is insufficient evidence to establish that this litigation was unjustified or frivolous. Furthermore, the communications with stock analysts and reporters do not constitute litigation misconduct. If there was clear and convincing evidence that the litigation was brought in bad faith, then certainly evidence of Neutrino attempting to leverage a settlement would compound that bad faith. However, there is no such evidence of bad faith litigation here, where there is insufficient evidence to establish that Redano knew that the '021 patent was invalid. Therefore, the Court finds that Sonosite has failed to present clear and convincing evidence of unjustified or vexatious litigation or litigation

---

[18] Neutrino's Surreply, p. 15.

11

misconduct sufficient to support a finding of exceptional case under § 285.[19]

## Conclusion

The Court finds that this is not an "exceptional case" under 35 U.S.C. § 285.  Therefore, Defendant's Motion for Exceptional Case and Attorneys' Fees (Dkt. # 368) is DENIED.

It is so ORDERED.

Signed this 30th day of March, 2007

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

[19] Recently, Sonosite filed additional briefing arguing Neutrino's "baseless" appeal of its case to the Federal Circuit and to the Supreme Court provides further evidence of Neutrino's vexatious litigation tactics (Dkt. #388).  Neutrino filed its response (Dkt. #389). After considering the additional arguments of the parties, the Court's decision remains unchanged.  The Court does not find that Neutrino's vigorous appeal of its case constituted bad faith or vexatious litigation.